MESCH, CLARK & ROTHSCHILD, P.C.
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: mmcgrath@mcrazlaw.com
     knye@mcrazlaw.com
By:   Michael McGrath, #6019
      Kasey C. Nye, #20610

BROWNSTEIN HYATT FARBER
SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Phone: (303) 223-1100
Fax: (303) 223-1111
Email: mpankow@bhfs.com
     jhantman@bhfs.com
By: Michael J. Pankow (Pro Hac Vice)
     Joshua M. Hantman (Pro Hac Vice)

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

In re:

REGIONAL CARE SERVICES CORP., ☐
CASA GRANDE COMMUNITY HOSPITAL ☐
D/B/A CASA GRANDE REGIONAL MEDICAL
CENTER,
REGIONAL CARE PHYSICIAN'S GROUP, ☐
INC., and
CASA GRANDE REGIONAL RETIREMENT ☐
COMMUNITY,

    Debtors.

This Filing Applies to:

☒  All Debtors
☐  Specified Debtor(s)

Chapter 11 Proceedings

Case Nos.  4:14-bk-01383-EWH
              4:14-bk-01384-EWH
              4:14-bk-01385-EWH
              4:14-bk-01386-EWH
              (Joint Administration)

Hearing Date:
Hearing Time:
Location:

## DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

### Dated: March 28, 2014

# TABLE OF CONTENTS

**Page**

ARTICLE I        INTRODUCTION ...................................................................................1

ARTICLE II      DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME ......................................................1

    2.01    Definitions ................................................................................1
    2.02    Rules of Interpretation ...........................................................11
    2.03    Computation of Time .............................................................12

ARTICLE III     BANNER TRANSACTION ...................................................12

    3.01    Purchase and Sale ..................................................................12
    3.02    Corporate Authority................................................................12
    3.03    Transfer Free and Clear .........................................................12
    3.04    Banner Assumes No Liability.................................................13
    3.05    Purchase Price.........................................................................13
    3.06    Executory Contracts and Unexpired Leases Assigned to Banner .............13
    3.07    Professional Fees Reserve ......................................................14

ARTICLE IV    TREATMENT OF UNCLASSIFIED CLAIMS ...........................15

    4.01    Administrative Expense Claims .............................................15
    4.02    Tax Claims..............................................................................15
    4.03    Professional Fees ....................................................................15
    4.04    Priority Claims .......................................................................15
    4.05    Statutory Fees ........................................................................15

ARTICLE V     DESIGNATION OF CLASSES .............................................16

    5.01    Classification ..........................................................................16
    5.02    Subclasses ..............................................................................16

ARTICLE VI    TREATMENT OF CLASSIFIED CLAIMS AND NON-PROFIT MEMBERSHIP INTERESTS ......................................17

    6.01    Class 1:  Allowed Bond-Related Claims .............................17
    6.02    Class 2: Banner Assumed Liabilities....................................18
    6.03    Class 3: Secured Claims ........................................................18
    6.04    Class 4:  General Unsecured Claims .....................................19
    6.05    Class 5:  Membership Interests.............................................19
    6.06    Cramdown...............................................................................19

ARTICLE VII   PROVISIONS REGARDING RESOLUTION OF CLAIMS AND DISTRIBUTIONS UNDER THE PLAN ......................19

    7.01    Method of Distributions under the Plan..................................19
    7.02    Objections to Claims..............................................................20
    7.03    Reserves for Disputed Claims ...............................................21
    7.04    Claims Estimation .................................................................21
    7.05    Claims Allowance .................................................................21

ARTICLE VIII  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................22

014855\0013\10941456.27

i

8.01   Assumption or Rejection of Executory Contracts and Unexpired Leases .............22

8.02   Claims Based on Rejection of Executory Contracts or Unexpired Leases .............22

ARTICLE IX      CREDITOR TRUST ..............................................22

9.01   Creditor Trust Agreement .............................................22
9.02   Creditor Trustee .............................................22
9.03   Powers and Duties .............................................22
9.04   Corporate Authority .............................................24
9.05   Compensation of Creditor Trustee and Professionals .............24
9.06   Post-Effective Date Statutory Fees .............................24
9.07   Post Confirmation Reports .............................................24
9.08   Exculpation .............................................25

ARTICLE X      IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN .............................................25

10.01   Term of the Automatic Stay .............................................25
10.02   Causes of Action .............................................25
10.03   Waiver of Avoidance Claims .............................................26
10.04   Discharge .............................................26
10.05   Preservation of Setoff Rights .............................................26
10.06   Committee Dissolved .............................................26
10.07   Injunction .............................................26

ARTICLE XI      EFFECTIVENESS OF THE PLAN .............................................27

11.01   Conditions Precedent to Effectiveness .............................................27

ARTICLE XII      RETENTION OF JURISDICTION .............................................27

12.01   Bankruptcy Court Jurisdiction .............................................27

ARTICLE XIII      MISCELLANEOUS PROVISIONS .............................................28

13.01   Effectuating Documents and Further Transactions .............28
13.02   Aid in Implementation of Plan .............................................28
13.03   Approval of Settlements and Releases .............................................29
13.04   Exculpation .............................................29
13.05   Releases by the Debtors .............................................29
13.06   Amendment or Modification of the Plan .............................................30
13.07   Severability .............................................30
13.08   Revocation or Withdrawal of the Plan .............................................30
13.09   Section 1125(e) Good-Faith Compliance .............................................31
13.10   Binding Effect .............................................31
13.11   Notices .............................................31
13.12   Governing Law .............................................31

# TABLE OF CONTENTS
## (continued)

| | | Page |
|---|---|---|
| 13.13 | Allocation of Plan Distributions Between Principal and Interest | 31 |
| 13.14 | Cancellation of Instruments | 31 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARTICLE I
## INTRODUCTION

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., Regional Care Services Corp. ("RCSC"), Casa Grande Community Hospital d/b/a Casa Grande Regional Medical Center ("CGRMC"), Regional Care Physician's Group, Inc. ("RCPG"), and Casa Grande Regional Retirement Community ("CGRRC") (collectively, the "Debtors"), propose the following Joint Plan of Reorganization (as may be altered, amended or modified from time to time, the "Plan").

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME

2.01 **Definitions**. As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

**"Administrative and Priority Claims Reserve"** means the account to be established by the Creditor Trustee, funded with Sale Proceeds, to be distributed to Allowed Priority Claims and Allowed Administrative Expense Claims, including Professional Fees, in an amount equal to that set forth in the Wind-Down Budget.

**"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under §§ 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses or liquidation of their assets, any Professional fee claim, and any fees or charges assessed against the Estates under § 1930 of Title 28 of the United States Code.

**"Allowed"** means, with respect to any Claim, the Claim or portion thereof that is not a Disputed Claim or Disallowed Claim: (a) for which a Proof of Claim or application (in the case of an Administrative Expense Claim) was timely filed with the Bankruptcy Court or the Claims

Agent, (b) for which no Proof of Claim thereof was filed, to the extent that such Claim has been listed by the Debtors in its Schedules as liquidated in amount and not disputed or contingent as to liability, (c) which arises from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and is allowed in accordance with § 502(h) of the Bankruptcy Code; (d) which is allowed under the Plan; or (e) which is allowed by a Final Order.

**"Allowed Baxter Claim"** means the Secured Claim of Baxter Healthcare Corp. in the amount of $1,000 pursuant to those certain Equipment Lease Agreement Nos. 13371 and 13377 by and between Baxter Healthcare Corporation and CGRMC, broadly secured by equipment as further described in UCC Filing Nos. 2004-132-7402-9 and 2013-173-9051-4.

**"Allowed Bond-Related Claims"** means, collectively, the Allowed Bondholder Claim and the Allowed Bond Redemption Premium Claim.

**"Allowed Bond Redemption Premium Claim"** means the Claim of the Bond Trustee and the Master Trustee for the premiums, penalties and other payments due under the Bond Documents, in excess of the Allowed Bondholder Claim, in the event the Bonds are redeemed prior to their respective stated maturity dates, which Claim shall be Allowed in the amount of $1,275,700.

**"Allowed Bondholder Claim"** means the Claim of the Bond Trustee and the Master Trustee for (i) the outstanding principal due and owing under the Bond Documents in the aggregate amount of $63,785,000, plus (ii) accrued interest thereon under the Bond Documents through the Confirmation Date, plus (iii) the reasonable fees and expenses of the Master Trustee and Bond Trustee, respectively, and their respective counsel and advisors in the amounts set forth in the Confirmation Order. For the avoidance of doubt, the Allowed Bondholder Claim does not include the Allowed Bond Redemption Premium Claim.

**"Allowed Cardinal Claim"** means the Secured Claim of Cardinal Health, Inc. and all of its affiliates and subsidiaries, including, without limitation, Cardinal Health 110, LLC f/k/a Cardinal Health 110, Inc., Cardinal Health 411, Inc., Cardinal Health 200, LLC, and Cardinal Health 414, LLC, in the amount of $1,222,105 pursuant to a certain credit application submitted

by CGRMC and related security agreement dated December 12, 2008 by and between Cardinal Health and CGRMC secured by substantially all of the Debtors' assets.

**"Allowed First Financial Corporate Claim"** means the Secured Claim of First Financial Corporate Leasing in the amount of $149,283 pursuant to that certain Equipment Schedule No. 14, dated February 8, 2010, to the Master Lease Agreement No. 042-406-BD, dated April 24, 2006, secured by the equipment listed thereunder, which Secured Claim consists of total amounts due under, and the fair market value buyout amount of the equipment as set forth in, the aforementioned lease.

**"Allowed Great Western Claim (Pavilion)"** means the Secured Claim of Great Western Bank in the amount of $699,612 pursuant to that certain bank loan agreement, dated June 25, 2004, originally by and between RCSC and Sunstate Bank, and transferred to Great Western Bank, secured by the Debtors' Pavilion property.

**"Allowed Great Western Claim (Urgent Care Center)"** means the Secured Claim of Great Western Bank in the amount of $688,871 pursuant to that certain bank loan agreement dated September 15, 2005, originally by and between CGRRC and Sunstate Bank, and transferred to Great Western Bank, secured by the Debtors' Urgent Care Center property.

**"Allowed Morgan Stanley Secured Claim"** means the Secured Claim of Morgan Stanley secured by and to the extent of the Morgan Stanley Collateral.

**"Allowed Morgan Stanley Unsecured Claim"** means the General Unsecured Claim of Morgan Stanley on account of the Debtors' remaining outstanding obligations under the Morgan Stanley Documents and Transactions not secured by the Morgan Stanley Collateral, which Claim shall be Allowed in the amount of $3,877,640.

**"Allowed Siemens Claim"** means the Secured Claim of Siemens Financial Services, Inc. in the amount of $434,082.21 pursuant to that certain Master Equipment Lease Agreement dated June 2, 2009, including but not limited to Leasing Schedule Nos. 17894, 17897, 17898, 18169, 18125, and 18126, each by and between CGRMC and Siemens Financial Services, Inc., secured by equipment as further described in the Master Lease and UCC Filing Nos. 2009-158-3828-5; 2009-158-3831-0; 2009-158-8680-7; 2009-158-8681-8; 2009-158-8682-9; 2009-158-9193-9; and

2009-158-9194-0, which Secured Claim consists of total amounts due, and the fair market value

buyout amount for all equipment as set forth, under the aforementioned leases.

**"APA"** means the Asset Purchase Agreement by and between the Debtors, as sellers, and

Banner as purchaser, dated as of February 4, 2014, a copy of which is attached as Exhibit A to the

Plan, as may be amended, modified or supplemented from time to time.

**"Avoidance Claims"** means any and all rights, claims, causes of action or rights to avoid

any transfer or incurrence of debt that may be asserted or recovered by the Debtors in their

respective capacities as debtors-in-possession pursuant to Chapter 5 of the Bankruptcy Code.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*,

as in effect on the date hereof.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated

by the United States Supreme Court under section 2075 of title 28 of the United States Code, and

local rules of the Bankruptcy Court, as the context may require.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of

Arizona, having jurisdiction over these Cases.

**"Banner"** means Banner Health, an Arizona nonprofit corporation.

**"Banner Assigned Contracts"** shall having the meaning set forth in Section 3.06(a) of

the Plan.

**"Banner Assumed Liabilities"** has the meaning set forth in Section 1.1 of the APA.

**"Bond Documents"** means, collectively, the Bonds, the Master Indenture, dated July 1,

2001 (as supplemented and amended), by and between the CGRMC and the Master Trustee, the

Bond Indenture, dated July 1, 2001 (as supplemented and amended), by and between the

Industrial Development Authority of the City of Casa Grande and the Bond Trustee, the Loan

Agreement, dated July 1, 2001 (as supplemented and amended), by and between Industrial

Development Authority of the City of Casa Grande and CGRMC, the Deed of Trust and

Assignment of Rents with Security Agreement, dated August 1, 2001 (as supplemented and

amended), and all other indentures, notes, instruments, agreements, documents and undertakings

executed in connection with or otherwise serving as collateral in connection with the Bonds.

"**Bond Trustee**" means Wells Fargo Bank, National Association, not individually, but as indenture trustee, under that certain Bond Indenture, dated July 1, 2001 (as supplemented and amended), by and between the Industrial Development Authority of the City of Casa Grande and Wells Fargo Bank, National Association, in its capacity as indenture trustee.

"**Bonds**" means, collectively, those certain (i) Hospital Revenue Refunding Bonds (Casa Grande Regional Medical Center), Series 2001A, in the initial aggregate principal amount of $41,845,000, (ii) Hospital Revenue Refunding Bonds (Casa Grande Regional Medical Center), Series 2001B, in the initial aggregate principal amount of $4,645,000 and (iii) Hospital Revenue Bonds (Casa Grande Regional Medical Center) Series 2002A, in the initial aggregate principal amount of $25,475,000, each issued pursuant to that certain Bond Indenture, dated July 1, 2001 (as supplemented and amended), by and between the Industrial Development Authority of the City of Casa Grande and the Bond Trustee.

"**Business Day**" means any day other than a Saturday, Sunday or any legal holiday under federal law or the State of Arizona.

"**Cash**" means cash and cash equivalents including, without limitation, checks and wire transfers; provided, that other than as set forth in the Bond Documents, no distributions to be made in Cash under this Plan shall be comprised of any funds or accounts held by the Master Trustee and Bond Trustee.

"**Causes of Action**" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law, equity or otherwise, except to the extent included in the Transferred Assets. For the avoidance of doubt, Causes of Action include (a) any right of setoff, counterclaim or recoupment, (b) any claim on contracts or for breaches of duties imposed by law or in equity, and (c) actions with respect to Avoidance Claims.

"**Chapter 11 Cases**" or "**Cases**" means the jointly administered cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors, styled <u>In re Regional Care Services Corp.,</u> <u>Casa Grande Community Hospital, Regional Care Physician's Group, Inc., and Casa Grande</u>

Regional Retirement Community, currently pending as Case No. 14-bk-01383-EWH on the docket of the Bankruptcy Court.

"**Claim**" has the meaning set forth in § 101(5) of the Bankruptcy Code.

"**Committee**" means any statutory committee of unsecured creditors in these Cases.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

"**Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court in the Bankruptcy Cases regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order entered by the Bankruptcy Court in the Bankruptcy Cases, in a form and substance reasonably acceptable to Banner, the Master Trustee and the Bond Trustee, confirming this Plan and approving the consummation of the transactions contemplated by the APA.

"**Creditor**" has the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

"**Creditor Trust**" means the trust for the benefit of Creditors established pursuant to Article IX of the Plan.

"**Creditor Trustee**" means the trustee appointed over the Creditor Trust.

"**Debtors**" has the meaning set forth in Article I.

"**DIP Loan**" means the Phase 2 Debtor in Possession Financing Agreement dated February 2, 2014 by and between the Debtors, as borrowers, and Banner, as lender.

"**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or part, by a Final Order; (b) has been withdrawn by agreement of the Debtors and the Holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the Holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the

filed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly filed.  In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**"Disputed Claim"** means any Claim as to which an Objection is pending, or any Claim as to which an Objection is contemplated by the Debtors or the Creditor Trustee.  For the avoidance of doubt, a Claim that is deemed Allowed pursuant to this Plan shall not constitute a Disputed Claim.

**"Distribution"** means any payment of Cash by the Debtors called for under the Plan.

**"Effective Date"** means a Business Day selected by Debtors after each of the conditions to effectiveness of the Plan provided in Section 11.01 hereof have been satisfied or waived in accordance with this Plan.

**"Estates"** means the estates in these Chapter 11 Cases.

**"Exculpated Parties"** means each of: (i) the Debtors, (ii) the Master Trustee in any capacity, (iii) the Bond Trustee in any capacity, (iv) the beneficial Holders of the Bonds, (v) the members of the Committee, if one is appointed, (vi) Banner, and (vii) the current and former officers, directors, members, managers, employees, attorneys, advisors and any other Professionals, each in their respective capacities as such, of each of the foregoing.

**"Final Order"** means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for reargument or rehearing will then be pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing will have been waived in writing, in form and substance, satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court will have been determined by the highest court to which such order was appealed, or certiorari reargument or rehearing will have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing will have expired;

provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed with respect to such order will not cause such order not to be a Final Order.

**"General Unsecured Claim"** means any Claim other than a Priority Claim, a Secured Claim, a Membership Interest or an Administrative Expense Claim.

**"Hired Employees"** means those employees of the Debtors who are hired by Banner upon or after the Sale Closing.

**"Holder"** means the holder of any Claim or Membership Interest.

**"Impaired"** means, when used in reference to a Claim or Membership Interest or a class thereof, a Claim or Membership Interest or class thereof that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**"Initial Distribution Date"** means the date to be determined by the Creditor Trustee, in his sole discretion, but in no event will such date be after August 15, 2014.

**"Master Trustee"** means Wells Fargo Bank, National Association, not individually, but as indenture trustee, under that certain Master Indenture, dated July 1, 2001 (as supplemented and amended), by and between the CGRMC and Wells Fargo Bank, National Association, in its capacity as indenture trustee.

**"Membership Interests"** means the membership interests in each of the Debtors.

**"Morgan Stanley"** means Morgan Stanley Capital Services LLC (f/k/a Morgan Stanley Capital Services Inc.) and/or Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated).

**"Morgan Stanley Collateral"** means cash on deposit in the bank account held by Morgan Stanley that CGRMC was obligated to fund from time to time as collateral under, and in accordance with the Morgan Stanley Documents and Transactions, in the amount of $752,372 according to the Debtors' books and records.

**"Morgan Stanley Documents and Transactions"** means, collectively, the ISDA Master Agreement, dated as of May 26, 2005, between CGRMC and Morgan Stanley Capital Services

LLC (f/k/a Morgan Stanley Capital Services Inc.) (as subsequently amended and together with any schedules and exhibits thereto and confirmation thereunder); the Credit Support Annex to the schedule to the ISDA Master Agreement, dated as of May 26, 2005, between CGRMC and Morgan Stanley Capital Services LLC (f/k/a Morgan Stanley Capital Services Inc.) (as amended on April 1, 2010 and as subsequently amended and together with any schedules and exhibits thereto); the transactions entered into between CGRMC and Morgan Stanley under the ISDA Master Agreement, including those evidenced by the confirmations dated May 26, 2005 and bearing Morgan Stanley Reference Numbers AUD5K, AUD5J, AUD5M, AUD5N and AUD5P; the Debt Service Fund (Principal Account) Forward Delivery Agreement, dated as of May 26, 2005, by and among CGRMC, Wells Fargo Bank, National Association, as trustee, Morgan Stanley Capital Services LLC (f/k/a Morgan Stanley Capital Services, Inc.), and Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated); the Debt Service Reserve Fund Forward Delivery Agreement, dated as of May 26, 2005, by and among CGRMC, Wells Fargo Bank, National Association, as trustee, Morgan Stanley Capital Services LLC (f/k/a Morgan Stanley Capital Services, Inc.), and Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated); the Debt Service Fund (Interest Account) Forward Delivery Agreement, dated as of May 26, 2005 (Reference No. AUD5J), by and among CGRMC, Wells Fargo Bank, National Association, as trustee, Morgan Stanley Capital Services, LLC (f/k/a Morgan Stanley Capital Services, Inc.), and Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated); and the Term Sheet, entered into as of April 1, 2010, between Morgan Stanley Capital Services LLC (f/k/a Morgan Stanley Capital Services Inc.) and CGRMC.

**"Objection"** means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim), or Membership Interest, other than a Claim or an Membership Interest that is Allowed.

**"Person"** means an individual, corporation, general or limited partnership, limited liability company, trust, liquidating trust, incorporated or unincorporated association, joint

venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind.

"**Petition Date**" means February 4, 2014.

"**Plan**" has the meaning set forth in Article I.

"**Prepetition Bridge Loan**" means that certain Phase I Bridge Financing Agreement and a related promissory note dated December 27, 2013, between the Debtors, as borrowers, and Banner, as lender, providing the Debtor with financing in the maximum principal amount of $3,308,000 for the period from December 27, 2013, through the Petition Date.

"**Priority Claim**" means any Claim entitled to priority under § 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

"**Professional Fees**" has the meaning set forth in Section 4.03 of the Plan.

"**Professional Fees Reserve**" means the fund established pursuant to Section 3.07 of the Plan.

"**Professionals**" means the professionals retained by the Debtors or the Committee under §§ 327 of the Bankruptcy Code and to be compensated pursuant to §§ 327, 328, 330, 331, or 503(b)(2) or (4) of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed in these Chapter 11 Cases.

"**Released Parties**" means each of: (i) the Debtors, (ii) the Master Trustee in any capacity, (iii) the Bond Trustee in any capacity, (iv) the beneficial Holders of the Bonds, (v) the members of the Committee, if one is appointed, (vi) Banner, and (vii) the current and former officers, directors, members, managers, employees, attorneys, advisors and any other Professionals, each in their respective capacities as such, of each of the foregoing.

"**Reserves**" means (i) the Administrative and Priority Claims Reserve, (ii) the Secured Claim Reserve, and (iii) any additional costs and expenses necessary to pay U.S. Trustee fees under 28 U.S.C. § 1930 or wind-down the Estates, in the amounts set forth in the Wind-Down Budget.

"**Sale Closing**" means the closing of the sale of the Transferred Assets to Banner under the APA.

**"Sale Proceeds"** means the cash proceeds received upon the Sale Closing.

**"Schedules"** mean the Schedules of Assets and Liabilities, the List of Holders of Interests, and the Statement of Financial Affairs filed by the Debtors in these Cases.

**"Secured Claim"** means any Claim, (i) to the extent reflected in the Schedules or a Proof of Claim as being secured and properly perfected, which is secured by a Lien, as defined by § 101(37) of the Bankruptcy Code, on collateral, to the extent of the value of the Estates' interest in such collateral, as determined as of the relevant determination date; (ii) that is subject to setoff pursuant to 11 U.S.C. § 553 to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to 11 U.S.C. § 506(a); or (iii) otherwise Allowed pursuant to the Plan as a Secured Claim.

**"Secured Claim Reserve"** means the reserve for Sale Proceeds held by the Creditor Trustee in an amount equal to all Secured Claims, plus interest, fees, costs and charges allowable under § 506(b) of the Bankruptcy Code, including the Allowed Bondholder Claim, which such amount shall be determined and set forth in the Confirmation Order.

**"Tax Claim"** means any claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

**"Transferred Assets"** means the Debtors' assets transferred to Banner as set forth in and pursuant to the APA. Notwithstanding language in the APA, no Causes of Action against the Master Trustee in any capacity, the Bond Trustee in any capacity, and the beneficial Holders of the Bonds will be transferred and are hereby released pursuant to the terms herein.

**"Wind-Down Budget"** means the budget, including, without limitation, reflecting amounts necessary to fund the Administrative and Priority Claims Reserve, for payment of expenses incurred by the Debtors, the Estates and the Creditor Trustee from and after the Effective Date, in a form and substance acceptable to Banner and the Master Trustee, which is to be filed with the Bankruptcy Court within ten (10) days prior to the Confirmation Hearing.

2.02    **Rules of Interpretation**.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural will include both the singular and the plural and

014855\0013\10941456.27

11

pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in § 102 of the Bankruptcy Code will apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, will have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and will not limit or otherwise affect the provisions of the Plan.

2.03 **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### ARTICLE III
### BANNER TRANSACTION

3.01 **Purchase and Sale**. Subject to the terms and conditions of the APA, Banner will purchase, and the Debtors will sell, the Transferred Assets on the Effective Date or at a later date pursuant to the terms of the APA and this Plan. Banner and the Debtors shall perform the terms and conditions of the APA and this Plan. Upon the Effective Date and subject to the conditions of the APA, the Debtors are authorized and directed to execute, deliver, perform under, consummate and implement the APA, together with all additional instruments and documents reasonably necessary or desirable to implement it.

3.02 **Corporate Authority**. The Debtors shall be deemed to have full corporate authority to enter into the APA and perform their obligations thereunder, in accordance with this Plan. The Plan and Confirmation Order shall constitute full corporate authorization to execute and perform the APA.

3.03 **Transfer Free and Clear.** Pursuant to Bankruptcy Code sections 363(f) and 1141(c), the sale and transfer of the Transferred Assets to Banner shall be free and clear of all claims and interests in such Transferred Assets, including liens, claims, interests, obligations and

encumbrances whatsoever, held by creditors or members of the Debtors. Liens shall attach to the Sale Proceeds in the same validity, scope and priority as existed against the Transferred Assets and shall be held in the Secured Claim Reserve pending distribution by the Creditor Trustee.

3.04 **Banner Assumes No Liability.** Except for the Assumed Liabilities (as defined in the APA), Banner assumes no liability to any Creditor of the Debtors by virtue of the transactions provided for in the Plan and the APA under any theory of contract, tort or doctrine of successor liability. Banner shall be deemed not to be a successor to the Debtors for purposes of the doctrine of successor liability. Upon the Effective Date and the closing pursuant to the APA, each and every holder of a claim against the Debtors shall be permanently enjoined from commencing, continuing or otherwise pursuing or enforcing any remedy, claim, cause of action or encumbrance against Banner or the Transferred Assets.

3.05 **Purchase Price.**

a. **Cash Purchase Price**. The Cash Purchase Price payable subject to the terms of the APA shall be paid into escrow for distribution pursuant to the Plan to satisfy the Allowed Bondholder Claim and distribution to the Creditor Trust established pursuant to Section 9.01 of the Plan. Upon resolution of all Allowed and Disputed Claims, completion of distributions thereon and payment of professional fees, expenses of the Creditor Trust, any fees due to the United States Trustee under 28 U.S.C. § 1930, and the Allowed Bond Redemption Premium Claim, any remaining funds shall be returned to Banner.

b. **Prepetition Bridge Loan and DIP Loan Forgiven.** After funding the Professional Fee Reserve Account pursuant to Section 3.07 of the Plan and in accordance with the APA, any and all obligations under the Prepetition Bridge Loan and the DIP Loan shall be deemed forgiven upon the Sale Closing.

3.06 **Executory Contracts and Unexpired Leases Assigned to Banner**.

a. **Contracts and Leases to be Assigned.** Upon the Sale Closing, the executory contracts and unexpired leases listed on Exhibit B to the Plan (to be updated prior to the Confirmation Hearing with respect to any contracts or leases entered into by the Debtors after

the Petition Date) shall be assumed and assigned to Banner. Such contracts and leases shall be referred to as the "Banner Assigned Contracts."

      b.    **Defaults.** The cure amounts under each Banner Assigned Contract shall be the amount set forth in Exhibit B to the Plan. Final cure amounts under each Banner Assigned Contract shall be the amount set forth in the Confirmation Order after such notice to counterparties and opportunity for hearing as ordered by the Court. To the extent such default is monetary, the counterparty to the applicable Banner Assigned Contract shall receive payment in Cash as soon as practicable after the Effective Date from the Creditor Trustee or as otherwise agreed between Banner and the counterparty to the contract, in an amount equal to the final cure amount less any payments made during these Chapter 11 Cases on account thereof in accordance with Bankruptcy Court approval. Upon assignment, Banner shall have no liability in respect of any default that occurred prior to the assignment.

      c.    **No Further Liability.** After assignment, neither any of the Debtors, nor the Creditor Trust, shall have any liability in respect of the Banner Assigned Contracts.

    3.07    **Professional Fees Reserve.** As provided in and subject to the conditions in the DIP Loan, on the Effective Date Banner shall advance DIP Loan funds as a part of the Carve-Out in an amount equal to the difference of (i) the cumulative amounts appearing in the Budget for professional fees and disbursements as of the Effective Date less (ii) the cumulative amounts actually funded for payment of Professional Fees and disbursements as of such date. The DIP Loan advance shall be deposited into a separate account maintained by the Creditor Trustee (the "Professional Fees Reserve Account") and used exclusively for payment of allowed professional fees and disbursements incurred by Borrower or any committee appointed pursuant to 11 U.S.C. § 1102 prior to the Effective Date. In the event any balance remains in the Professional Fee Reserve Account after full payment of all such allowed professional fees and disbursements, such balance shall be returned to Banner.

**ARTICLE IV**
**TREATMENT OF UNCLASSIFIED CLAIMS**

4.01 **Administrative Expense Claims**. The deadline for filing an Administrative Expense Claim (other than post-petition operating expenses or professional fees) shall be 30 days after the Effective Date (the "Administrative Expense Claim Bar Date"). Except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim, by the later of (i) the date that is 14 days after the Effective Date or (ii) the date that is 14 days after the Administrative Expense Claim is Allowed. Notwithstanding the foregoing, the Debtors are permitted to pay administrative expense claims arising from the ordinary course of business without the need for application or court order. Current taxes will be prorated at Sale Closing, with pre-Closing taxes paid by the Debtors or the Creditor Trust, as appropriate.

4.02 **Tax Claims**. Except to the extent any entity entitled to payment of any Allowed Tax Claim has received payment on account of such Claim prior to the Effective Date, each Holder of an Allowed Tax Claim shall receive, in full and final satisfaction of its Allowed Tax Claim, Cash in an amount equal to the amount of such Tax Claim within 14 days after the Effective Date.

4.03 **Professional Fees**. All Professionals seeking payment of professional fees or reimbursement of expenses incurred through and including the Effective Date under §§ 330(a) and 503(b)(2), of the Bankruptcy Code ("Professional Fees") shall file their respective final applications on or before the date that is 60 days after the Effective Date.

4.04 **Priority Claims.** Each holder of a Priority Claim, if any, shall receive, in full and final satisfaction of its Priority Claim, Cash in an amount equal to the Allowed Amount of such Priority Claim within 14 days after the Effective Date.

4.05 **Statutory Fees**. On or before 30 days after the Effective Date, the Creditor Trustee shall make all payments required to be paid the U.S. Trustee pursuant to § 1930 of Title

28 of the United States Code. All fees payable pursuant to § 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Creditor Trustee on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed.

**ARTICLE V**
**DESIGNATION OF CLASSES**

5.01 **Classification**. Claims and Membership Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 (Allowed Bond-Related Claims) | **Impaired** | Entitled to Vote |
| Class 2 (Banner Assumed Liabilities) | **Unimpaired** | Not Entitled to Vote |
| Class 3 (Secured Claims) | **Impaired** | Entitled to Vote |

  Class 3A  Allowed Cardinal Claim

  Class 3B  Allowed Siemens Claim

  Class 3C  Allowed Baxter Claim

  Class 3D  Allowed Morgan Stanley Secured Claim

  Class 3E  Allowed Great Western Claim (Pavilion)

  Class 3F  Allowed Great Western Claim (Urgent Care Center)

  Class 3G  Allowed First Financial Corporate Claim

| | | |
|---|---|---|
| Class 4 (General Unsecured Claims) | **Impaired** | Entitled to Vote |

  Class 4A – General Unsecured Claims Against CGRMC

  Class 4B – General Unsecured Claims Against RCSC

  Class 4C – General Unsecured Claims Against RCPG

  Class 4D – General Unsecured Claims Against CGRRC

| | | |
|---|---|---|
| Class 5 (Membership Interests) | **Impaired** | Not Entitled to Vote |

5.02 **Subclasses**. For purposes of voting and distribution, subclasses are each treated as a separate class.

**ARTICLE VI**
**TREATMENT OF CLASSIFIED CLAIMS AND NON-PROFIT MEMBERSHIP**
**INTERESTS**

6.01    **Class 1:  Allowed Bond-Related Claims**.

a.    As of the Effective Date, the Allowed Bondholder Claim shall be deemed Allowed for all purposes under this Plan.  Amounts due thereunder, after taking into effect Section 6.01(b) of this Plan, shall be paid to the Master Trustee from the Sale Proceeds, for the benefit of all Holders of the Bonds, on the Effective Date or as soon as practicable thereafter.

b.    As of the Effective Date, the Master Trustee and the Bond Trustee shall be deemed to have applied all cash and cash equivalents held by each in debt service reserve accounts and any other accounts and funds established under the applicable Bond Documents (net of any reasonable fees and expenses of the Master Trustee and Bond Trustee, respectively, and their respective counsel and advisors) to reduce the aggregate amount of Allowed Bondholder Claim. The Master Trustee and the Bond Trustee shall be authorized to apply those funds in accordance with the applicable Bond Documents.

c.    As of the Effective Date, the Allowed Bond Redemption Premium Claim shall be deemed Allowed for all purposes under this Plan. The Allowed Bond Redemption Premium Claim shall be subordinate in payment to Class 4 General Unsecured Claims and shall be paid to the extent funds are available for distribution from the Creditor Trust after (a) the Reserves, (b) payment of Administrative Expenses, Priority Claims, and Tax Claims provided in Article IV of the Plan not otherwise contained in the Reserve, and (c) payment on account of Allowed Claims in Classes 1 (except for the Allowed Bond Redemption Premium Claim), 3, and 4.

d.    The treatment of the Allowed Bondholder Claim and the Allowed Bond Redemption Premium Claim set forth in this Section 6.01 shall be in full and final satisfaction of (i) the Allowed Bondholder Claim, (ii) the Allowed Bond Redemption Premium Claim, (iii) any and all Claims of the Bond Trustee, the Master Trustee, and all Holders of the Bonds, and (iv) any

and all Claims in respect of, arising out of, or related to the Bonds or the Bond Documents, including the Allowed Bondholder Claim and the Allowed Bond Redemption Premium Claim.

6.02 **Class 2: Banner Assumed Liabilities**. The rights of the Holders of Class 2 Claims shall not be affected by this Plan or Confirmation Order. Banner has agreed to assume certain specified liabilities pursuant to the APA.

6.03 **Class 3: Secured Claims**.

a. **Class 3A.** The Allowed Cardinal Claim shall be paid in full as soon as practicable after the Effective Date.

b. **Class 3B.** The Allowed Siemens Claim shall be paid in full as soon as practicable after the Effective Date.

c. **Class 3C.** The Allowed Baxter Claim shall be paid in full as soon as practicable after the Effective Date.

d. **Class 3D.** Morgan Stanley has two claims in these Cases: (i) the Allowed Morgan Stanley Secured Claim, which is secured by and to the extent of the Morgan Stanley Collateral, and (ii) the Allowed Morgan Stanley Unsecured Claim, which represents the unsecured remainder of the Debtors' outstanding obligations to Morgan Stanley under the Morgan Stanley Documents and Transactions. On the Effective Date, Morgan Stanley shall receive, in full satisfaction of the Allowed Morgan Stanley Secured Claim, the Morgan Stanley Collateral. The Allowed Morgan Stanley Unsecured Claim shall be treated as an Allowed Class 4A General Unsecured Claim under the Plan. The treatment of the Allowed Morgan Stanley Secured Claim and the Allowed Morgan Stanley Unsecured Claim set forth in this Section 6.03 shall be in full and final satisfaction of (i) the Allowed Morgan Stanley Secured Claim, (ii) the Allowed Morgan Stanley Unsecured Claim, and (iii) any and all Claims in respect of, arising out of, or related to the Morgan Stanley Documents and Transactions.

e. **Class 3E** The Allowed Great Western Claim (Pavilion) shall be paid in full as soon as practicable after the Effective Date.

f. **Class 3F.** The Allowed Great Western Claim (Urgent Care Center) shall be paid in full as soon as practicable after the Effective Date.

g.    **Class 3G**.  The Allowed First Financial Corporate Claim will be paid in full as soon as practicable after the Effective Date.

6.04    **Class 4:  General Unsecured Claims.**    Commencing on the Initial Distribution date, Holders of Allowed Claims in Classes 4A, 4B, 4C, and 4D will receive a pro rata distribution of funds available for distribution from the Creditor Trust after (a) the Reserves, (b) payment of Administrative Expenses, Priority Claims, and Tax Claims provided in Article IV of the Plan not otherwise contained in the Reserve, and (c) payment on account of Allowed Class 1 and Allowed Class 3 Claims.  Holders of Allowed Claims in Classes 4A, 4B, 4C, and 4D shall not receive postpetition interest on account of their Claims.  If Holders of Allowed Claims in Classes 4A, 4B, 4C, and 4D are not paid in full on the Initial Distribution Date or upon Allowance of their Claims, and Cash remains after all Claims are Allowed or Disallowed, and all remaining costs to wind down the Estates or the Creditor Trust are paid or arranged to be paid, additional *pro rata* distributions will be made from time to time to Holders of Allowed Claims in Classes 4A, 4B, 4C, and 4D up to the full amount of their Allowed Claims, without postpetition interest.

6.05    **Class 5:  Membership Interests**.  Class 5 Membership Interests shall be cancelled and shall not receive anything under the Plan.

6.06    **Cramdown**.  If any class of Claims fails to accept the Plan in accordance with § 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting, impaired Class.  The Plan will seek confirmation pursuant to with respect to the Membership Interests.

**ARTICLE VII**
**PROVISIONS REGARDING RESOLUTION OF CLAIMS**
**AND DISTRIBUTIONS UNDER THE PLAN**

7.01    **Method of Distributions under the Plan**.

a.    <u>In General</u>.  Subject to Bankruptcy Rule 9010, all Distributions under the Plan shall be made by the Creditor Trustee to the Holders of each Allowed

014855\0013\10941456.27                    19

Claim at the address of such Holder as listed on the Schedules or Proof of Claim, as applicable, provided that the Allowed Bondholder Claim shall be paid out of escrow at or as soon as reasonably practicable after the Sale Closing.

b. <u>Distributions of Cash</u>. The Creditor Trustee shall maintain its post-Effective Date bank accounts in compliance with Bankruptcy Code § 345 or orders of this Bankruptcy Court. Payments made by the Debtors pursuant to the Plan shall be made by check. All checks for distribution shall be negotiated within 90 days of the date of such check, after which such check shall be void. A Creditor who does not negotiate payment within the 90-day period shall have one year after the check becomes void to assert payment on account of its claim pursuant to this Plan, after which time its Claim shall be reduced to zero. At such time, the Creditor Trustee will no longer be obligated to reserve for such Claim or make any further distributions in respect of such Claims.

c. <u>Timing of Distributions</u>. Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

d. <u>Tax Withholding</u>. Distributions to Holders of Allowed Claims shall be net of amounts, if any, required to be withheld pursuant to applicable State and Federal wage or backup withholding requirements.

7.02 **Objections to Claims**.

a. After the Effective Date, Objections to Claims may be made, and Objections to Claims made previous thereto shall be pursued, only by the Creditor Trustee at his sole discretion.

b. After the Effective Date, the Creditor Trustee may settle any Disputed Claim where the proposed Allowed Claim is to be less than $25,000 without notice and a hearing and without an order of the Bankruptcy Court. All

014855\0013\10941456.27

20

other settlements shall be subject to notice and a hearing pursuant to §
102(1) of the Bankruptcy Code and a Final Order of the Bankruptcy Court
approving the settlement.

7.03 **Reserves for Disputed Claims**. If any Claim is a Disputed Claim, no distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim. In the event a Distribution is made while there is a Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld and remain in the a bank account maintained in compliance with § 7.01(b) of the Plan until the Claim is Allowed or Disallowed. If the Claim is Allowed, the Holder of the Allowed Claim will receive its withheld Distribution.

7.04 **Claims Estimation**. The Creditor Trustee or any Holder of a Disputed Claim may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtors or Creditor Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time concerning any objection to any Claim, including during the pendency of any appeal relating to any such Objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Creditor Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism pursuant to this Plan or approved by the Bankruptcy Court.

7.05 **Claims Allowance**. Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Creditor Trustee shall have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date.

**ARTICLE VIII**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

8.01 **Assumption or Rejection of Executory Contracts and Unexpired Leases**. Pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any party that have not been previously assumed pursuant to an order of the Bankruptcy Court or are not a Banner Assigned Contract, shall be deemed rejected on the Effective Date.

8.02 **Claims Based on Rejection of Executory Contracts or Unexpired Leases**. With respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Section 8.01 of this Plan, the bar date to file Proofs of Claim shall be 10 days after the Effective Date and all such Proofs of Claim must be filed during that time to enable an appropriate Reserve to be determined before the Initial Distribution Date. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Section 8.01 of this Plan for which a Proof of Claim is not timely filed within that time period shall be forever barred from assertion against the Debtors officers, directors or agents of the Debtors, the Estates, its successors and assigns, or its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

**ARTICLE IX**
**CREDITOR TRUST**

9.01 **Creditor Trust Agreement**. The Creditor Trust will be formed as of the Effective Date and shall be governed by the Creditor Trust Agreement, substantially in the form filed with a Plan Supplement. The Creditor Trust shall receive all assets of the Debtors' Estates, excluding Transferred Assets, but including the Sale Proceeds and any Excluded Assets under the APA.

9.02 **Creditor Trustee**. Scott Davis, a Partner at Grant Thornton LLP, shall be appointed as the Creditor Trustee.

9.03 **Powers and Duties**. The Creditor Trustee shall have the following powers and duties:

a. To take control of, preserve, and convert to Cash property of the Estates, subject to the terms of this Plan;

b. To investigate, prosecute and/or abandon all Causes of Action belonging to or assertible by the Estates, excluding all Avoidance Claims;

c. To review and object to Claims filed against the Debtors;

d. To compromise all disputes, including all Causes of Action and Objections to Claims;

e. To make distributions on account of all Allowed Claims consistent with the terms of this Plan and if funds remain in the Creditor Trust after treatment of all Allowed Claims in accordance with the Plan and with satisfaction or reservation for all wind-down expenses, return the excess funds to Banner in accordance with the APA;

f. To retain Persons and professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan;

g. To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan;

h. To hire employees and/or terminate current employees of the Debtors; it being understood, however, that the Creditor Trustee shall not have the power to hire any Hired Employee without consent from Banner;

i. To pay expenses incurred in carrying out the powers and duties enumerated pursuant to this Plan, including professional fees incurred after the Effective Date;

j. To take all necessary actions to ensure that the corporate existence of the Debtors remains in good standing until entry of a final decree closing the Chapter 11 Case;

k. To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan;

l.      In general, without in any manner limiting any of the foregoing, to deal with the assets of the Estates or any part or parts thereof in all other ways as would be lawful for any Person owning the same to deal therewith; provided, however, that the investment powers of the Debtors, other than those reasonably necessary to maintain the value of the Debtors' assets and to further the liquidating purpose, are limited to the power to invest in demand and time deposits, such as short term certificates of deposit, in banks and other savings institutions, or other temporary, liquid investments, such as United States Treasury Bills; and

m.     At the appropriate time, to ask the Bankruptcy Court to enter the final decree.

9.04    **Corporate Authority**.  From and after the Sale Closing, the Creditor Trustee will have all corporate authority for each of the Debtors entities to execute any documents or instruments necessary or appropriate post-Sale Closing and to take any other corporate action to wind up and dissolve the corporate entities.

9.05    **Compensation of Creditor Trustee and Professionals**.  The Creditor Trustee and any professionals retained by the Creditor Trustee are entitled to reasonable compensation at their standard rates.  When seeking payment, the Creditor Trustee or the relevant professional shall provide a copy of the statement to Banner and the Master Trustee.  If no written objection to the payment request is received within 10 days, then the sum requested shall be promptly paid.  Any objection shall specify the amount objected to and reasons.  If an objection is made, the undisputed amount shall be promptly paid.  If the parties are unable to resolve any remaining disputes, the Bankruptcy Court shall resolve the dispute upon notice and a hearing.

9.06    **Post-Effective Date Statutory Fees.**  All fees payable pursuant to 28 U.S.C. § 1930 incurred after the Effective Date shall be paid in accordance with applicable law.

9.07    **Post Confirmation Reports.**  The Creditor Trustee shall submit post-confirmation reports in accordance with applicable law.

9.08  **Exculpation**.  Neither the Creditor Trustee nor its designees, retained professionals or any duly designated agent or representative shall be liable for anything other than such Person's own acts as shall constitute willful misconduct or gross negligence in the performance (or nonperformance) of its duties, or acts contrary to the express terms of this Plan. The Creditor Trustee may, in connection with the performance of its functions, consult with counsel, accountants and its agents, and may reasonably rely upon advice or opinions received in the course of such consultation.  If the Creditor Trustee determines not to consult with counsel, accountants or its agents, such determination shall not in itself be deemed to impose any liability on the Creditor Trustee, or its members and/or its designees.  The Creditor Trust shall indemnify the Creditor Trustee for any and all damages, fees and expenses incurred in connection with these Cases or this Plan; except that the Creditor Trustee shall not be indemnified from damages, fees or expenses arising from its gross negligence or willful misconduct.

**ARTICLE X**
**IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN**

10.01  **Term of the Automatic Stay**.  The automatic stay provided for under § 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of the time these Cases are closed or dismissed.

10.02  **Causes of Action**.  Except for Avoidance Claims and as otherwise provided in the Plan, as of the Effective Date, pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, any and all Causes of Action accruing to the Debtors, or the Debtors in their capacity as debtors-in-possession, not released or compromised pursuant to this Plan, shall be assigned to the Creditor Trustee as representative of the Estates.  The Creditor Trustee shall have authority to compromise, settle, discontinue, abandon, dismiss, or otherwise resolve all such Causes of Action when the proposed settlement amount is to be less than $25,000 without notice and a hearing and without an order of the Bankruptcy Court.  All other settlements shall be subject to notice and a hearing pursuant to § 102(1) of the Bankruptcy Code and a Final Order of the Bankruptcy Court.

10.03 **Waiver of Avoidance Claims**. Upon the Effective Date and conditioned upon Sale Closing, all Avoidance Claims shall be deemed waived and abandoned.

10.04 **Discharge**. Except as otherwise provided herein, and irrespective of any prior orders of the Bankruptcy Court or any other court of competent jurisdiction, effective as of the Confirmation Date: (1) the rights afforded in the Plan and the treatment of all Claims and Membership Interests herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Membership Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, or any of its assets, property or its Estates; (2) the Plan shall bind all Holders of Claims and Membership Interests, regardless of whether any such Holders failed to vote to accept or to reject the Plan or voted to reject the Plan; and (3) all Claims against and Membership Interests in the Debtors, and the Debtors in its capacity as debtor-in-possession, shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including, without limitation, any liability of the kind specified under § 502(g) of the Bankruptcy Code; *provided, however*, that nothing in this Plan shall discharge any liabilities of the Debtors arising after the Confirmation Date or that is not otherwise a Claim within the meaning of § 101(5) of the Bankruptcy Code.

10.05 **Preservation of Setoff Rights**. Subject to Sections 3.03 and 3.04 of the Plan, on and after the Effective Date, rights of setoff pursuant to Bankruptcy Code § 553 shall be preserved. After the Effective Date, such setoff may be exercised pursuant to agreement of the Debtors and the affected Creditor. Any disputes regarding the right of setoff shall be determined upon motion before the Bankruptcy Court.

10.06 **Committee Dissolved**. Upon the Effective Date, the Committee, if one is appointed, shall be dissolved automatically and its members shall be deemed released of all their duties, responsibilities and obligations in connection with these Cases and this Plan.

10.07 **Injunction**. All parties, including but not limited to, Holders of Claims and Membership Interests shall be enjoined from commencing or continuing, in any manner, Cause of Action against the Creditor Trust or Creditor Trustee.

## ARTICLE XI
## EFFECTIVENESS OF THE PLAN

11.01 **Conditions Precedent to Effectiveness**. The Plan shall not become effective unless and until each of the following conditions have been satisfied or waived in writing by each of the Debtors and Banner:

    a.    The Confirmation Order, in form and substance reasonably satisfactory to the Debtors, Banner, the Bond Trustee, and the Master Trustee shall have been entered by the Bankruptcy Court;

    b.    There is no stay or injunction in effect with respect to the Confirmation Order;

    c.    14 days shall have passed since the Confirmation Order has been entered by the Bankruptcy Court and the Confirmation Order shall have otherwise become a Final Order; and

    d.    The conditions to Sale Closing under the APA shall have been satisfied or waived.

## ARTICLE XII
## RETENTION OF JURISDICTION

12.01 **Bankruptcy Court Jurisdiction**. The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

    a.    To determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

    b.    To determine any and all adversary proceedings, applications and contested matters;

    c.    To determine any Objection to Administrative Expense Claims or Claims;

d.    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

e.    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

f.    To determine all applications for compensation and reimbursement of expenses of professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

g.    To determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

h.    To determine disputes arising in connection with the recovery of all assets of the Debtors and property of the Estates, wherever located;

i.    To determine matters concerning taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

j.    To determine any other matter not inconsistent with the Bankruptcy Code; and

k.    To enter a final decree closing the Chapter 11 Case.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.01  **Effectuating Documents and Further Transactions**.  The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities pursuant to the Plan.

13.02  **Aid in Implementation of Plan**.  The Bankruptcy Court may direct the Debtors and any other necessary party to execute or deliver or to join the execution or delivery of any instrument required to effect the Plan, and to perform any other act necessary to consummate the Plan.

13.03 **Approval of Settlements and Releases**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the subordination of the Bond Redemption Premium and other consideration and benefits provided in the Chapter 11 Cases and under this Plan, the provisions of the Plan affecting the treatment of the Class 1 Allowed Bond-Related Claims, including, without limitation, Section 6.01 and the releases and exculpations set forth in Article XIII herein, shall constitute a good-faith compromise and settlement of the Estates' Causes of Action and the Claims and Liens of the Bond Trustee, the Master Trustee and the beneficial Holders of the Bonds, respectively. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Causes of Action and any and all Claims and Liens of the Bond Trustee, the Master Trustee, and the beneficial Holders of the Bonds pursuant to the Plan as well as a finding that such settlement is fair, reasonable and in the best interest of the Debtors and their Estates.

13.04 **Exculpation**. None of the Exculpated Parties shall have or incur any liability to any Person for any act or omission in connection with, related to, or arising out of these Cases, administration of these Cases, or the planning of these Cases, including, without limitation, the Debtors' decision to enter into the APA and related agreements with Banner, the Debtors' decision to file these Cases, the preparation, formulation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into during these Cases or otherwise created in connection with the Plan, the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities.

13.05 **Releases by the Debtors**.

ON THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION AND IN RETURN FOR THE COMPROMISES EMBODIED IN THE PLAN, THE RECEIPT AND ADEQUACY OF WHICH ARE HEREBY CONFIRMED, THE DEBTORS, ON BEHALF OF THEMSELVES AND THEIR ESTATES, THE REORGANIZED DEBTORS, AND THE

CREDITOR TRUSTEE, SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED ANY AND ALL CLAIMS AND CAUSES OF ACTION, INCLUDING AVOIDANCE CLAIMS, AGAINST THE RELEASED PARTIES ARISING PRIOR TO THE EFFECTIVE DATE.

13.06 **Amendment or Modification of the Plan**.  Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with § 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan as altered amended or modified satisfies the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under § 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications.  A Holder of a Claim or Membership Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Membership Interest of such Holder.

13.07 **Severability**.  In the event that the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Membership Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness, or unenforceability of any such provision shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

13.08 **Revocation or Withdrawal of the Plan**.  The Debtors shall have the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors revokes or withdraws the Plan before the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

13.09 **Section 1125(e) Good-Faith Compliance**. The Debtors, the Creditor Trustee and other parties subject to this Chapter 11 proceeding, and each of their respective representatives, shall be deemed to have acted in good-faith under section 1125(e) of the Bankruptcy Code in connection with the confirmation and consummation of this Plan.

13.10 **Binding Effect**. The Plan shall be binding upon and inure to the benefit of the Debtors and the Holders of Claims and Membership Interests and their respective successors and assigns.

13.11 **Notices**. To be effective, all notices, requests and demands to or upon the Debtors shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or electronic mail, when received, addressed as follows:

> *If to the Creditor Trustee:*
> Scott Davis
> 201 South College Street, Suite 2500
> Charlotte, NC 28244

13.12 **Governing Law**. Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Arizona without giving effect to the principles of conflicts of law of such jurisdiction.

13.13 **Allocation of Plan Distributions Between Principal and Interest**. To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

13.14 **Cancellation of Instruments**. On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the Membership Interests shall be deemed automatically canceled, shall be of no further force, whether surrendered for cancellation or otherwise, and the obligations of the

1  Debtors thereunder or in any way related thereto shall be discharged. On the Effective Date, and
2  conditioned upon full payment and satisfaction of the Allowed Bondholder Claim, all notes,
3  interests, instruments, certificates, and other documents evidencing the Bond Documents shall be
4  deemed inoperative and unenforceable as against the Debtors and, except to the extent otherwise
5  provided herein, the Debtors shall have no continuing obligations thereunder; provided, however,
6  that (a) the Bond Documents shall continue in effect for purposes of allowing Holders of the
7  Bonds to receive Distributions under the Plan and (b) the Bond Documents shall remain operative
8  and enforceable with respect to any Person, other than the Debtors, which has rights and/or
9  obligations thereunder. The Bond Trustee and Holders of Class 3 Claims shall execute and deliver
10 into escrow lien releases or other instruments reasonably requested by the Debtors or Banner to
11 ensure that liens are properly released of record.

12 March 28, 2014

13                                        Debtors and Debtor-in-Possession

14

15                                        By: _____ s/ _Rana Crystby_____

                                         Title: Chief Executive Officer

16

17 APPROVED AS TO FORM:

18 Michael McGrath, #6019
   Kasey C. Nye, #20610
19 **MESCH, CLARK & ROTHSCHILD, P.C.**
   259 North Meyer Avenue
20 Tucson, Arizona 85701
   Phone: 520.624.8886
21 Fax: 520.798.1037
   Email:
22

23 AND

24 Michael J. Pankow (Co. # 21212)
   Joshua M. Hantman (Co. # 42010)
25 **BROWNSTEIN HYATT FARBER SCHRECK, LLP**
   410 Seventeenth Street, Suite 2200
26 Denver, CO 80202-4432
   Telephone: 303.223.1100
27 Facsimile: 303.223.1111

28 *Attorneys for Debtors-In-Possession*
   014855\0013\10941456.27                          32